**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ANITA PARKER, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | No.: 16-cv-10775 |
| J. CREW GROUP, INC., J. CREW, LLC., and DOES 1 through 100, inclusive, | Honorable Samuel Der-Yeghiayan |
| Defendants. | |

## PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201(b) and (c) and the Court's inherent authority, Plaintiff Anita Parker hereby respectfully requests that the Court take judicial notice of each of the following matters:

**Exhibit 1:**     The New Jersey federal district court's opinion (Dkt. No. 63) granting a 12(b)(1) motion to dismiss based on the lack of federal subject matter jurisdiction in *Kamal v. J. Crew Group, Inc.*, No. 2:15-cv-00190-WJM-MF (D. N.J.)("*Kamal*") against J. Crew Group, Inc. ("J. Crew").

**Exhibit 2:**     J. Crew's memorandum of points and authorities (Dkt. No. 50-1) in support of its 12(b)(1) motion to dismiss for the lack of federal subject matter jurisdiction in the *Kamal* FACTA case against J. Crew.

**Exhibit 3:**     J. Crew's reply (Dkt. No. 53) in support of its 12(b)(1) motion to dismiss for the lack of federal subject matter jurisdiction in the *Kamal* FACTA case against J. Crew.

A true and correct copy of Exhibits 1 through 3 are attached hereto.

Exhibits 1 through 3 are each publically available documents and were obtained through Pacer through the United States District Court for the District of New Jersey's CM/ECF system on November 30, 2016.

"[F]ederal courts may also take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue." *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983), *cert.* denied, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983).

Dated:  December 5, 2016                               Respectfully Submitted,

Chant Yedalian (*Pro hac vice*)
chant@chant.mobi
CHANT & COMPANY
A Professional Law Corporation
1010 N. Central Ave.
Glendale, CA 91202
Telephone: 877.574.7100

Robert A. Clifford
rac@cliffordlaw.com
Shannon M. McNulty
smm@cliffordlaw.com
CLIFFORD LAW OFFICES PC
120 North LaSalle Street, 31st Floor
Chicago, IL 60602
Telephone: 312.899.9090

Brian Herrington
(*Pro hac vice* motion pending)
brian@herringtonlawpa.com
HERRINGTON LAW, PA
1520 N. State St.
Jackson, MS 39202
Telephone: 601.208.0013

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Shannon M. McNulty, an attorney, hereby certify that on December 5, 2016, I served the above and foregoing, by causing a true and accurate copy of such papers to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system.


/s/ Shannon M. McNulty
Robert A. Clifford
RAC@cliffordlaw.com
Shannon M. McNulty
SMM@cliffordlaw.com
CLIFFORD LAW OFFICES
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602
312.899.9090

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **AHMED KAMAL,** | Civ. No. 2:15-0190 (WJM) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **J. CREW GROUP, INC.,** *et al.*, | |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Ahmed Kamal brings this putative class action suit for alleged violations of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. This matter comes before the Court on Defendants' motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). For the reasons set forth below, the motion to dismiss is **GRANTED**. Plaintiff's Amended Complaint is **DISMISSED** without prejudice.

## I.    BACKGROUND

In 2003, Congress passed the Fair and Accurate Credit Transaction Act ("FACTA") in part to curb credit card fraud and identity theft. 15 U.S.C. § 1681c. It prohibits, among other things, printing more than the last five digits of a credit card number on a sales receipt, a policy known as "truncation."[1] In theory, at least, truncation reduces the risk that third parties use financial information on lost or stolen receipts to perpetrate fraud or identity theft. FACTA creates a private cause of action for "any actual damages . . . or damages of not less than $100 and not more than $1,000." 15 U.S.C. § 1681n(a).

Defendants are a conglomerate of several hundred clothing stores and manufacturers known as J. Crew, along with parent company Chino's Holdings, Inc.

---

[1] The Court notes that credit card numbers are generally comprised of sixteen digits.

Plaintiff Ahmed Kamal brings this action "on behalf of all persons or entities to whom Defendants provided an electronically printed receipt at the point of sale or transaction . . . which receipt displayed more than the last five digits of the customer's credit card number." Pl. Am. Compl., ¶ 13.

Plaintiff alleges that on December 18, 2014, he visited one of Defendants' retail locations in Ocean City, Maryland. Upon making a purchase with his Discover credit card, Plaintiff was given a receipt featuring the last four digits and the first six digits of his credit card number, whereas the statute would permit printing no more than the final five digits.  Pl. Am. Compl., ¶ 69. Plaintiff reports that similar violations occurred when he made purchases at Defendants' Rehoboth Beach, Delaware location on December 22, 2014, and at Defendants' Wayne, New Jersey location on January 4, 2015.

### Procedural History before this Court

The Amended Complaint of March 25, 2015 states a single count action for violating FACTA. Plaintiff seeks the statutory damages of $100 to $1000 per violation along with attorneys' fees and punitive damages. On August 6, 2015, the Court denied Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), finding that Plaintiff adequately stated a claim for willful violation of FACTA's credit card number truncation provision. *See* 15 U.S.C. § 1681, *et seq*.

The Court stayed the case in December of 2015 pending the Supreme Court's decision in *Spokeo Inc. v. Robins*, which asked the following: "Whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute." Defs. Mot. Dismiss, at 1. That case was decided on May 16, 2016. *Spokeo Inc. v. Robins*, 136 S. Ct. 1540 (2016).

On June 15, 2016, following supplemental briefing, Defendants moved to dismiss under 12(b)(1), arguing that Plaintiff lacked standing under Article III of the Constitution, and that the Court thus lacks subject matter jurisdiction over the action. Defs. Mot. Dismiss, at 2.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle for challenging a plaintiff's Article III standing. Fed. R. Civ. P. 12(b)(1); *see Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175 (3d Cir. 2000). The burden of establishing subject matter jurisdiction rests with the plaintiff. *Spokeo, Inc. v. Robins*,

136 S. Ct. 1540 (2016). *Animal Sci. Prod., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 470 (3d Cir. 2011). "Although 'general factual allegations of injury resulting from the defendant's conduct may suffice,' the complaint must still 'clearly and specifically set forth facts sufficient to satisfy' Article III." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) (citations omitted).

## III.   DISCUSSION

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Art. III § 2. Plaintiffs must "clearly . . . allege facts demonstrating" all three elements of constitutional standing: (1) an "injury in fact," (2) that is "fairly traceable" to a defendant's conduct, and that (3) is likely to be redressed by favorable judicial intervention. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992). To establish an "injury in fact," Plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations omitted). Defendants correctly argue that Plaintiff lacks standing because his injury is not sufficiently "concrete."

### A. Governing Case Law

This action was stayed in December of 2015 pending the Supreme Court's decision in *Spokeo v. Robbins*. That decision confirmed that an "injury-in-fact" must be "concrete" even where Congress has authorized a private cause of action. *Spokeo*, 136 S. Ct., at 1548 (citations omitted). *Spokeo* did not disturb this circuit's standing jurisprudence. *See In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 273 (3d Cir. 2016). An "injury in fact" may be "intangible" or difficult to monetize, but it must be "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct., at 1548. Where the alleged injury is heightened risk of future harm, the allegations must "entail a degree of risk sufficient to meet the concreteness requirement." *Id. at* 1550; *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013); *Bock v. Pressler & Pressler, LLP*, 2016 WL 4011150, at *1 (3d Cir. July 27, 2016) ("the question framed by [*Spokeo*] [is] whether the particular procedural violations alleged in [a] case entail a degree of risk sufficient to meet the concreteness requirement.") (citation omitted).

As the Defendants argue, the alleged injury here entails an increased risk of suffering fraud or identity theft sometime in the future, not a manifest violation of a traditional privacy interest. *Compare Reilly*, 664 F.3d, at 41 (finding no standing for allegations of an increased risk of identity theft resulting from the defendant's security breach) *with Nickelodeon II*, 827 F.3d, at 295 (finding plaintiff had standing

where defendant engaged in coordinated surveillance of web browsing and disclosed private data to third parties).[2] The purpose of credit card truncation is to limit incremental risk of fraud or identity theft, not safeguard one's freedom from "injurious disclosure[] as to private matters" or "intrusion upon the domestic circle" or some other traditional privacy interest. *See* Samuel D. Warren & Louis D. Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193 (1890); *Nickelodeon II*, 827 F.3d, at 295 (finding standing where plaintiffs adequately stated claim for invasion of privacy). The essential question is whether, in light of Congress' decision to authorize private suits under FACTA, printing ten rather than five credit card digits on a sales receipt elevates the risk of fraud enough to work a "concrete" injury for the purpose of Article III standing. If the harm is not "concrete," the Court lacks subject matter jurisdiction and must dismiss the case.

## B. Plaintiff's Article III Standing

On its face, the Amended Complaint alleges that Plaintiff became more susceptible to fraud because J. Crew prints the first six and last four digits of credit card numbers on customer receipts, instead of just the last four digits. *See* Am. Compl., ¶ 42 ("By failing to comply Defendants have deprived their customers of the protections that the statute was designed to confer, and exposes cardholders to increased risk of identity theft."). Several district courts have examined whether an individual in Plaintiff's position has Article III standing in light of *Spokeo*'s discussion of the "concreteness" requirement. They have reached inconsistent outcomes. *See Thompson v. Rally House of Kansas City et al.*, 15-cv-00886-GAF, at *9 (W.D. Mo. Oct. 6, 2016) (printing first six and last four digits amounts to "purely procedural violation" of FACTA and does not constitute an injury-in-fact); *Wood v. J Choo USA*, 2016 WL 4249953, at *4 (S.D. Fla. Aug. 11, 2016) (denying motion to dismiss claim for lack of standing where defendant violated FACTA by including expiration date on receipt); *Guarisma v. Microsoft*, 2016 WL 4017196 (S.D. Fla. July 26, 2016); *Altman v. White House Black Mkt., Inc.*, 2016 WL 3946780 (N.D. Ga. July 13, 2016).

The Court finds that Plaintiff's allegations do not "entail a degree of risk sufficient to meet the concreteness requirement." *Spokeo*, 664 F.3d, at 1550. The Amended Complaint does not provide any facts demonstrating a risk sufficiently "actual or imminent" to constitute a concrete injury. *Thompson*, 15-cv-00886-GAF, at *9 (W.D. Mo. Oct. 6, 2016). *See also Reilly v. Ceridian* Corp, 664 F.3d 38, 46 (3d Cir. 2011); *Crisafulli v. Ameritas Life Ins. Co.*, 2015 WL 1969176 (D.N.J. Apr. 30, 2015), at *3 (plaintiff failed to demonstrate "plausible, increased risk of future harm"

---

[2] It is telling that, unlike *Nickelodeon*, this action does not allege any private tort or other count besides its claim under FACTA.

and thus lacked standing); *Noble v. Nevada Checker CAB Corp.*, 2016 WL 4432685, at *3 (D. Nev. Aug. 19, 2016) (finding no standing for FACTA plaintiffs where alleged injury was printing extra digit on customer receipts).

There is no evidence that anyone has accessed or attempted to access or will access Plaintiff's credit card information. *See Thompson*, 15-00886, at * 9 ("There is no real risk of harm as the improper receipt has only been in Plaintiff's possession since receiving it from Defendants."); *Khan v. Children's Nat'l Health System*, 2016 WL 2946165, at *5 (D. Maryland May 19, 2016) (risk of future harm did not amount to "injury in fact" where it was unclear whether hackers "actually viewed, accessed, or copied" personal medical data). Nothing has been disclosed to third parties. *See Reilly*, 664 F.3d, at 43-44; *Braitberg v. Charter Commc'ns, Inc.*, No. 14-1737, __F.3d__, 2016 WL 4698283, at *4 (8th Cir. Sept. 8, 2016) (procedural violation of data retention statute was not sufficiently "concrete" to confer standing). Nor does the record indicate that anyone will *actually* obtain one of Plaintiff's discarded J. Crew receipts, and—through means left entirely to the Court's imagination—identify the remaining six digits of the card number and then proceed undetected to ransack Plaintiff's Discover account.

Plaintiff vaguely refers to less sophisticated identity thieves called "carders" or "dumpster divers," who supposedly coble together credit card numbers from lost or discarded receipts. Am. Compl., ¶ 20. Even considered in a most favorable light, whatever causal chain Plaintiff alludes to is even more attenuated than the allegations in *Reilly* and other risk-of-harm cases in which courts have found no standing. *See, e.g.*, *In re Horizon Healthcare Services, Inc. Data Breach Litigation*, 2015 WL 1472483, at *6 (March 31, 2015); *In re Toys "R" Us – Delaware, Inc. – FACTA Litigation*, 2010 WL 5071073, at *11 (C.D. Cal. Aug. 17, 2010) (risk of printing the first six and final four digits of credit card were statistically negligible). In *Reilly*, for instance, the court found no standing where hackers "potentially gained access to personal and financial information" after a security breach, because there was no evidence that "the hacker read, copied, or understood" the data. *Reilly*, 664 F.3d, at 42; *Khan*, 2016 WL 2946165, at *5. By analogy, Plaintiff's injury would be further removed still: akin to an increased risk of a data breach sometime in the future. That possibility is not sufficiently "concrete" to qualify as an "injury in fact." *See Clapper*, 133 S. Ct. 1138, 1147 (2013) ("Allegations of future harm can establish Article III standing if that harm is "certainly impending," but "allegations of possible future injury are not sufficient.").

The Court recognizes that Congress may "define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." 136 S. Ct., at 1549. But "Congress' role in identifying and elevating intangible harms

does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right . . ." *Id.* (internal quotations omitted). Not all violations of FACTA "cause harm or present any material risk of harm." *See id.* at 1550; *Smith v. Ohio State University*, 2016 WL 3182675, at *4 (S.D. Ohio June 8, 2016) (no standing under *Spokeo* for "bare procedural violation" of FCRA). No facts in the Senate Report cited by Plaintiff validate the alleged injury. *See* Senate Report No. 108-166 (Oct. 17, 2003). In fact, as Defendants note, the Credit and Debit Card Receipt Clarification Act of 2007 instructs that "[t]he purpose of [FACTA] is to ensure that consumers suffering from any *actual harm* to their credit or identity are protected." Pub. L. No. 110-241 (June 3, 2008) (emphasis added). *See Harris v. Wal-Mart Stores Inc.*, No. 07 C 02561, 2008 WL 5085132, at *2 (N.D. Ill. Nov. 25, 2008) ("Congress made clear that its purpose in enacting the Clarification Act and amending § 1681n was to allow claims as a result of actual harm to one's credit or identity and to dispense with claims where no actual harm is sustained.").

While FACTA as a whole may implicate traditional privacy interests, Plaintiff's alleged injury does not. *See Braitberg*, 2016 WL 4698283, at *4 (no standing for violation of data retention, because "[a]lthough there is a common law traditional of lawsuits for invasion of privacy, the retention of information lawfully obtained, without further disclosure, traditionally has not provided the basis for a lawsuit in American courts."). Without an "injury in fact," Plaintiff lacks standing to sue under Article III. Plaintiff is free to refile an amended complaint within 30 days of this decision.

## IV. CONCLUSION

For the forgoing reasons, the Defendants' motion to dismiss the Complaint is **GRANTED without prejudice to Plaintiff's right to file an amended complaint within thirty days of this decision**.


                          ___/s/ William J. Martini_____
                          **WILLIAM J. MARTINI, U.S.D.J.**

**October 20, 2016**

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

------------------------------------- X
                             :

AHMED KAMAL, on behalf of himself and
the putative class,
                             : Case No. 2:15-cv-00190-WJM-MF

           Plaintiff,
                             : *ELECTRONICALLY FILED*

      v.
                             :

J. CREW GROUP, INC., et al.
                             : Returnable:  July 18, 2016

           Defendants.
                             : ORAL ARGUMENT REQUESTED
                             :

------------------------------------- X

---

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) DUE TO LACK OF STANDING

---

**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Telephone No.: (973) 520-2550
Fax No.: (973) 520-2551
*Attorneys for Defendants*

Of Counsel:
      Keara M. Gordon (admitted *pro hac vice*)
      Andrew O. Bunn

On the Brief:
      James V. Noblett
      Steven R. Marino

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................1

SUMMARY OF THE ALLEGATIONS AND RELIEF SOUGHT  IN THE AMENDED
COMPLAINT ...............................................................................................2

RELEVANT PROCEDURAL HISTORY .......................................................3

SUMMARY OF SPOKEO AND THE SUPREME COURT'S DECISION ................3

ARGUMENT ..................................................................................................7

   I.    THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF
   SUBJECT-MATTER JURISDICTION BECAUSE KAMAL DOES NOT HAVE
   STANDING. ................................................................................................7

      A.   Kamal Has Not Pled an "Injury in Fact". ..............................................8

        i.    Kamal Does Not Allege that he Suffered any "Concrete Harm".............8

        ii.   Kamal Alleges Only a "Bare Procedural Violation". ...........................11

   II.   THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.......11

CONCLUSION ...............................................................................................12

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

Ballentine v. United States,
    486 F.3d 806 (3d Cir. 2007) ................................................................................7

Bateman v. Am. Multi-Cinema, Inc.,
    623 F.3d 708 (9th Cir. 2010) ..............................................................................4

Clapper v. Amnesty Int'l USA,
    568 U.S. __, 133 S. Ct. 1138 (2013) ..................................................................9

Constitution Party of Pa. v. Aichele,
    757 F.3d 347 (3d Cir. 2014) ................................................................................7

Crisafulli v. Amertias Life Ins. Corp.,
    Civil Action No. 13-5937, 2015 WL 1969176 (D.N.J. April 30, 2015) ..............10

Faurelus v. Aviles,
    Civil Action No. 13-6964(WJM), 2014 WL 791816 (D.N.J. Feb. 24, 2014) ..........7

FW/PBS, Inc. v. Dallas,
    493 U.S. 215 (1990) ............................................................................................7

In re Horizon Healthcare Servs., Inc. Data Breach Litig.,
    Civil Action No. 13-7418(CCC), 2015 WL 1472483 (D.N.J. March 31, 2015) ..........10

In re Schering Plough Corp. Intron/Temodar Consumer Class Action,
    678 F.3d 235 (3d Cir. 2012) ................................................................................7

Khan v. Children's Nat'l Health Sys.,
    __ F. Supp. 3d __, 2016 WL 2946165 (D.Md. May 19, 2016) ....................6, 7, 10

Long v. Tommy Hilfiger U.S.A., Inc.,
    671 F.3d 371 (3d Cir. 2012) ................................................................................3

Love v. New Jersey State Police,
    Civil Action No.: 14-1313(FLW)(TJB), 2016 WL 3046257 (D.N.J. May 26, 2016) ..........11

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) ....................................................................................5, 6, 8

MSA Prods., Inc. v. Nifty Home Prods., Inc.,
    883 F. Supp. 2d 535 (D.N.J. 2012) ....................................................................11

Reilly v. Ceridian Corp.,
    664 F.3d 38 (3d Cir. 2011), cert. denied, 132 S.Ct. 2395 (2012) ..................9, 10

Robins v. Spokeo,
    Case No. 2:10-cv-5306-ODW-AGR (C.D.Cal.) ....................................................4

Robins v. Spokeo, Inc.,
    742 F.3d 409 (9th Cir. 2014) .........................................................................5

Robins v. Spokeo, Inc.,
    No. CV10-05306(ODW)(AGRx), 2011 WL 597867 (C.D.Cal. Jan. 27, 2011) ......................5

Smith v. The Ohio State University,
    2:15-cv-3030, 2016 WL 3182675 (S.D.Ohio June 8, 2016) ...................................6

Spokeo, Inc. v. Robins,
    __ U.S. __, 135 S. Ct. 1892 (2015) ...............................................................3

Spokeo, Inc. v. Robins,
    __ U.S. __, 136 S.Ct. 1540 (2016) ........................................................passim

Steel Co. v. Citizens for Better Environment,
    523 U.S. 83 (1988) ....................................................................................8

Warth v. Seldin,
    422 U.S 490 (1975) ...............................................................................7, 8

**STATUTES**

15 U.S.C. § 1681, et. seq. ..............................................................................3

15 U.S.C. § 1681n ........................................................................................4, 9

15 U.S.C. § 1681n(a)(1)(A) .....................................................................3, 9, 11

Fair and Accurate Credit Transaction Act of 2003 ("FACTA") ...........................passim

**RULES**

Federal Rule of Civil Procedure 12(b)(1) ...................................................2, 7, 12

**OTHER**

Pub. L. No. 108-159, 117 Stat. 1952 (2003) ....................................................3

U.S. Const. art. III, § 2 ...........................................................................passim

## PRELIMINARY STATEMENT

In this lawsuit, Plaintiff Ahmed Kamal ("Kamal") does not allege that he has suffered any actual, concrete harm.  Kamal does not allege that anyone other than him has seen any credit card receipt he got from J. Crew, that he lost his receipts, or that they were stolen, or that anyone has used any information on them to commit fraud or theft or that his identity was compromised in any way.  Kamal does not purport to allege that he is facing a substantial risk of imminent future harm.  Kamal alleges that J. Crew allegedly gave him three receipts in December 2014 and January 2015 that disclosed more than the last five digits of his credit card number and that this action, which had no discernible impact on Kamal, violated the Fair and Accurate Credit Transaction Act of 2003 ("FACTA").  He seeks to recover – on behalf of a putative class of anyone in the country who similarly received a receipt with additional credit card digits in the last six years – statutory damages.  Kamal's attempt should be rejected and the Amended Complaint should be dismissed because Kamal does not allege that he suffered a "concrete" injury and thus he fails to meet the "injury in fact" standing requirements of Article III of the Constitution.

In December, 2015, this Court stayed this action pending the United States Supreme Court's resolution of the question presented in Spokeo v. Robbins: "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute."  (ECF No. 44 p. 2).  In so doing, the Court recognized that "[i]f the Court agrees with those Courts that have rejected 'statutory standing' Plaintiff will have no standing to proceed with the current case."  (Id.).

The United States Supreme Court has now answered the question; it held that "Article III standing requires a concrete injury even in the context of a statutory violation.  For that reason, [the plaintiff in <u>Spokeo</u>] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  <u>Spokeo, Inc. v. Robins</u>, __ U.S. __, 136 S.Ct. 1540, 1549 (2016).  A "concrete" injury is one that is "real" and not "abstract"—"it must actually exist."  <u>Spokeo</u>, 136 S. Ct. at 1548 (internal quotation marks omitted).  A concrete injury is required "even in the context of a statutory violation."  <u>Id.</u> at 1549.

This ruling eviscerates Kamal's claims of standing.  He does not allege that he suffered any harm, let alone "concrete harm" that "actually exist[s]".  Instead, a "bare procedural violation" is all that Kamal alleges.  Because Kamal lacks standing to sue, this Court lacks subject-matter jurisdiction, and the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

## SUMMARY OF THE ALLEGATIONS AND RELIEF SOUGHT IN THE AMENDED COMPLAINT

The Amended Complaint alleges that Kamal made three purchases at three separate J. Crew[1] stores between December 18, 2014 and January 4, 2015.  (Am. Compl. at ¶¶ 68-70).  In each instance, the receipt displayed, in addition to the last four digits of Kamal's credit card, the first six digits.  (<u>Id.</u>).  J. Crew partially complied with FACTA by redacting Kamal's name, the remaining digits, and the expiration date of his credit card.  (<u>Id.</u>).

---

[1]      Several of J. Crew's present and former affiliates that have no involvement in this dispute are improperly included as defendants.  (<u>See</u> ECF No. 23-1, Motion to Dismiss Amended Complaint, at pp. 23-24).  However, all defendants seek to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), and for convenience purposes they will collectively be referred to as "J. Crew."

There is no allegation that anyone other than Kamal ever saw or possessed his receipts, ever used his credit card number, that his identity was compromised, or that Kamal suffered actual damages as a result of the appearance of the additional digits on his receipts.  Moreover, there is no allegation that Kamal will suffer actual or imminent future harm.

Kamal alleges that the partial non-compliance by J. Crew was "willful" (id. at ¶ 74) and, as a result, he (and every member of the putative class) is entitled to statutory damages "of not less than $100 and not more than $1,000" (id. at p. 19, "WHEREFORE," ¶ a; see also 15 U.S.C. § 1681n(a)(1)(A)).

## RELEVANT PROCEDURAL HISTORY

On August 20, 2015, J. Crew filed a motion to stay pending resolution by the United States Supreme Court of Spokeo, Inc. v. Robins, __ U.S. __, 135 S. Ct. 1892 (2015) (granting petition for writ of certiorari).  (ECF No. 35).  This Court granted J. Crew's motion to stay on December 29, 2015.  (ECF Nos. 44 and 45).  The Supreme Court issued its opinion in Spokeo on May 16, 2016 (as revised on May 24, 2016).  On June 1, 2016, this Court granted J. Crew permission to proceed by way of a formal Motion to dismiss for lack of standing based on the Supreme Court's guidance in Spokeo.  (ECF. No. 49).

## SUMMARY OF SPOKEO AND THE SUPREME COURT'S DECISION

In Spokeo, the Supreme Court clarified the "concrete and particularized" requirements to establish an injury in fact as applied to a plaintiff seeking statutory damages under The Fair Credit Reporting Act of 1970 ("FCRA), 15 U.S.C. § 1681, et. seq.[2]  136 S.Ct. at 1548.

---

[2]      FCRA was amended in 2003, to include FACTA, the statutory scheme involved in this case.  See Long v. Tommy Hilfiger U.S.A., Inc., 671 F.3d 371, 373 (3d Cir. 2012) ("In 2003, Congress amended the Fair Credit Reporting Act by enacting FACTA) (internal citation omitted) (citing Pub. L. No. 108-159, 117 Stat. 1952 (2003)).

Spokeo, Inc. ("Spokeo") operates a "'people search engine'" that "conducts a computerized search in a wide variety of databases and provides information about the subject of the search." Id. at 1544. A search of Thomas Robins ("Robins") showed "some" information that allegedly was "incorrect." Id. Robins learned of these alleged inaccuracies and filed a putative class action complaint. (Bunn Declaration ("Bunn Decl."), Ex. A, Amended Complaint in Robins v. Spokeo, Case No. 2:10-cv-5306-ODW-AGR (C.D.Cal.)).

Robins alleged that Spokeo, which he alleged to be a consumer reporting agency under FCRA, "maintains an inaccurate consumer report about [him] on its website." (Id. at ¶ 30). Robins alleged that he suffered the following harm:

> ¶ 34: Defendant's inaccurate report is particularly harmful to Plaintiff in light of the fact that he is currently out of work and seeking employment. In fact, Mr. Robins has been actively seeking employment throughout the time that Spokeo has displayed inaccurate consumer reporting information about him and he has yet to find employment.

> ¶ 35: Defendant has caused Plaintiff actual and/or imminent harm by creating, displaying, and marketing inaccurate consumer reporting information about Plaintiff. Specifically, and in light of the fact that Plaintiff remains unemployed, Defendant has caused actual harm to Plaintiff's employment prospects. This harm is also imminent and ongoing.

> ¶ 36: Because Plaintiff is unemployed, he has lost and continues to lose money.

> ¶ 37: Additionally, Plaintiff has suffered actual harm in the form of anxiety, stress, concern, and/or worry about his diminished employment prospects.

(Id. at ¶¶ 34-37). Robins alleged that Spokeo willfully violated the FCRA and, as a result, he sought "the maximum statutory damages available under 15 U.S.C. § 1681n." (Id. at ¶¶ 65, 71, 75; see also id. at "Prayer for Relief," ¶(C) ("Award Plaintiff and the Class statutory damages to the maximum extent allowable.")).[3]

---

[3]     Robins sought the same statutory damages Kamal seeks. (Compare Am. Compl. at ¶¶ 40-41 (seeking statutory damages of $100 to $1,000 under 15 U.S.C. § 1681n), with Bunn Decl.,

The District Court dismissed the complaint for lack of standing.  Robins v. Spokeo, Inc., No. CV10-05306(ODW)(AGRx), 2011 WL 597867 (C.D.Cal. Jan. 27, 2011).  Specifically, the District Court rejected Robins's argument "that he has met the requirements of standing simply by alleging that [Spokeo] is in violation of a statute that grants individuals a private right of action," because "even when asserting a statutory violation, the plaintiff must allege the Article III minima of injury-in-fact."  Id. at *1 (internal quotation marks omitted).  The District Court concluded that Robins's "concern that he **will** be adversely affected by [Spokeo's] website in the future, is an insufficient injury to confer standing."  Id. (emphasis in original).

The Ninth Circuit reversed, finding that the injury-in-fact requirement of Article III of the Constitution was satisfied because: (i)  "[the plaintiff] alleges that Spokeo violated **his** statutory rights, not just the rights of other people, so he is 'among the injured'"; and (ii) "Robins's personal interests in the handling of his credit information are individualized rather than collective."  Robins v. Spokeo, Inc., 742 F.3d 409, 413-14 (9th Cir. 2014) (emphasis in original) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 578 (1992)).

The Supreme Court vacated, holding that the Ninth Circuit "failed to fully appreciate the distinction between concreteness and particularization" in its injury in fact standing analysis.  Spokeo, 136 S. Ct. at 1550.  The Supreme Court reiterated that the "'irreducible constitutional minimum' of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Id. at 1547 (quoting Lujan, 504 U.S. at 560).

---

Ex. A at ¶¶ 65, 71, 75 (seeking "the maximum statutory damages available under 15 U.S.C. § 1681n")).  A violation of FACTA, a subset of FCRA, is subject to standard FCRA remedies. See, e.g., Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 715 (9th Cir. 2010) (stating that "FACTA and other provisions of the FCRA share the same statutory damages provisions, see 15 U.S.C. § 1681n").

The first element, injury in fact, requires a showing by the plaintiff "that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1547-48 (quoting Lujan, 504 U.S. at 560). The Supreme Court found that the two reasons advanced by the Ninth Circuit in favor of standing both "concern particularization, not concreteness." (Id. at 1548). The Supreme Court reinforced that "an injury in fact must be both concrete **and** particularized," and that concreteness "is quite different from particularization." (Id.) (emphasis in original).

The Supreme Court made clear that "**Article III standing requires a concrete injury even in the context of a statutory violation**." Id. at 1549 (emphasis added). "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. The Supreme Court then concluded that, "**Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.** Id. (emphasis added). The Supreme Court then added:

> In the context of this particular case, these general principles tell us two things: On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. **On the other hand, Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm**. . . .

(Id. at 1549-50) (emphasis added); see also Smith v. The Ohio State University, 2:15-cv-3030, 2016 WL 3182675, at *4 (S.D.Ohio June 8, 2016) (post-Spokeo decision dismissing putative claim action under FCRA because plaintiffs "did not suffer a concrete consequential damage as a result of [defendant's] alleged breach of the FCRA"); Khan v. Children's Nat'l Health Sys., __

F. Supp. 3d __, 2016 WL 2946165 (D.Md. May 19, 2016) (post-Spokeo decision dismissing putative class action because the plaintiff did "not allege[] an injury in fact as required to establish Article III standing").

The Supreme Court remanded the case because the Ninth Circuit "did not address the question framed by our discussion, namely, whether the particular procedural violation alleged in this case entails a degree of risk sufficient to meet the concreteness requirement." Id. at 1550.

## ARGUMENT

I. **THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION BECAUSE KAMAL DOES NOT HAVE STANDING.**

"[T]he exercise of judicial power depends upon the existence of a case or controversy because Article III of the Constitution limits the judicial power of federal courts to 'cases or controversies' between parties." Faurelus v. Aviles, Civil Action No. 13-6964(WJM), 2014 WL 791816, at *2 (D.N.J. Feb. 24, 2014) (quoting U.S. Const. art. III, § 2). "The courts have developed several justiciability doctrines to enforce the case-or-controversy requirement, and perhaps the most important of these doctrines is the requirement that a litigant have standing to invoke the power of a federal court." In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 244 (3d Cir. 2012) (internal quotation marks omitted). Accordingly, "[a] motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014) (citing Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007)).

The plaintiff bears the burden of establishing that he or she has standing. Spokeo, 136 S.Ct. at 1547 (citing FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990)); see also Warth v. Seldin, 422 U.S 490, 502 (1975) (stating that in a class action, the court looks to injuries alleged

by the named plaintiff(s), not unnamed member(s) of the putative class, to assess Article III standing). The "'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (quoting Lujan, 504 U.S. at 560). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." Id. (quoting Warth, 422 U.S. at 518).

### A. Kamal Has Not Pled an "Injury in Fact".

Kamal does not satisfy the "[f]irst and foremost" of standing's three requirements, injury in fact. Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 103 (1988). The Spokeo Court explained that an "injury in fact" requires a showing of "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S.Ct. at 1548 (quoting Lujan, 504 U.S. at 560). That standard holds true "even in the context of a statutory violation." Id. at 1549.

Here, the requisite analysis is whether Kamal satisfies the "concrete" component of an "injury in fact" necessary to confer standing. As explained below, Kamal does not allege that he suffered any "concrete harm," but instead alleges solely a "bare procedural violation" that the Supreme Court found insufficient to "satisfy the injury-in-fact requirement of Article III." Id. at 1549. This Court need not go further and address either of standing's other two requirements.

### i. Kamal Does Not Allege that he Suffered any "Concrete Harm".

"A 'concrete injury must be 'de facto'; that is, it must actually exist." Id. at 1549 (quoting Black's Law Dictionary 479 (9th ed. 2009)). No concrete harm "actually exist[s]" here because Kamal does **not** allege he suffered any actual damages from the date of the first

allegedly partially non-compliant receipt, December 18, 2014, to the present.  While Kamal alleges that identity thieves may attempt to obtain "credit card receipts that are lost or discarded, or through theft, and use the information on them to commit fraud and theft" (Am. Compl. at ¶ 20), here, there is no allegation that anyone but Kamal saw his credit card receipts, that he lost them, or they were stolen, or that anyone has used any information on them to commit fraud or theft, or the receipts were used to make unauthorized purchases that caused him to incur fees and/or costs or that his identity was compromised in any way.  See, e.g., Reilly v. Ceridian Corp., 664 F.3d 38, 42 (3d Cir. 2011) (affirming dismissal for lack of standing in the data breach context because "[a]ppellants have not suffered any injury; there has been no misuse of the information, and thus, no harm"), cert. denied, 132 S.Ct. 2395 (2012).

The relief Kamal seeks does not include actual damages.  Kamal invokes 15 U.S.C. 1681n (the same one Robins invoked in Spokeo), which provides that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter . . is liable" for "any actual damages sustained by the consumer as a result of the failure **or** damages of not less than $100 and not more than $1,000."  15 U.S.C. 1681n(a)(1)(A) (emphasis added).  Although the statute provides for actual **or** statutory damages, Kamal seeks only to recover statutory damages (as did Robins in Spokeo).  (See Am. Compl. at p. 19, "WHEREFORE" (not seeking to recover actual damages but only "[s]tatutory damages of $100 to $1,000 per violation").

Moreover, unlike the plaintiff in Spokeo, Kamal does not even attempt to allege that there is a "risk of real harm" in the future that can satisfy the requirement of concreteness.  Spokeo, 136 S.Ct. at 1549 (citing Clapper v. Amnesty Int'l USA, 568 U.S. __, 133 S. Ct. 1138 (2013)).  The Amended Complaint is devoid of any allegations that Kamal's receipts and credit card information will somehow be misappropriated in the future if a third party somehow takes

physical possession of the receipts from Kamal and if that third party uses Kamal's credit card information.

Even if the Amended Complaint did contain allegations of possible future harm, they would be improper speculation that courts in this Circuit routinely have found insufficient to withstand a motion to dismiss. For example, in the data breach context, the Third Circuit in Reilly affirmed dismissal of a complaint because the harm alleged by the plaintiff was contingent on hypothetical action by a third party:

> [W]e cannot now describe how Appellants will be injured in this case without beginning our explanation with the word "if"; **if** the hacker read, copied, and understood the hacked information, and **if** the hacker attempts to use the information, and **if** he does so successfully, only then will Appellants have suffered an injury.

Reilly, 664 F.3d at 43 (emphasis in original); see also Khan, 2016 WL 2946165 at *7 (post Spokeo dismissal of data breach class action because the allegations were "akin to those in Reilly" about speculative future injury); Crisafulli v. Amertias Life Ins. Corp., Civil Action No. 13-5937, 2015 WL 1969176, at *4 (D.N.J. April 30, 2015) (finding no standing to sue because plaintiff has "alleged no misuse of information and any future identity theft relies on the same speculative chain of events identified in Reilly"); In re Horizon Healthcare Servs., Inc. Data Breach Litig., Civil Action No. 13-7418(CCC), 2015 WL 1472483, at *6 (D.N.J. March 31, 2015) ("As in Reilly and other data breach cases, Plaintiffs' future injuries stem from the conjectural conduct of a third party bandit and are therefore inadequate to confer standing."). Kamal's situation is even further removed from those cases because there is no allegation that his credit card receipts have been seen by anyone other than him.

### ii. Kamal Alleges Only a "Bare Procedural Violation".

Without any concrete harm, the entire Amended Complaint is nothing more than allegations about "bare procedural violation[s]." <u>Spokeo</u>, 136 S.Ct. at 1549. The Amended Complaint focuses on establishing that J. Crew knew or should have known of the existence of FACTA in an effort to establish that J. Crew "willfully fail[ed] to comply with" FACTA's requirements pursuant to 15 U.S.C. 1681n(a)(1)(A). (<u>See</u> Am. Compl. at ¶¶ 19-23, 27-37, 43-58, 59-62, 64). Without more, such allegations are insufficient to confer standing. The Supreme Court's observation in <u>Spokeo</u> that "[a] violation of one of the FCRA's procedural requirements may result in **no harm**," is precisely the case here—any alleged "willful" FACTA violation by J. Crew has indisputably resulted in "no harm" to Kamal, depriving him of standing to sue. <u>Id.</u> at 1550 (emphasis added).

## II. THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

Kamal's original Complaint, filed on January 10, 2015, did not allege that he suffered any "concrete" harm. He filed an Amended Complaint on March 25, 2015 that similarly makes no such allegations. If Kamal did not suffer any "concrete" harm prior to <u>Spokeo</u>, he cannot now attempt to invent harm in response to <u>Spokeo</u>. Accordingly, any further amendment of his Complaint will be futile, and this Court should grant J. Crew's motion to dismiss with prejudice. <u>See, e.g.</u>, <u>Love v. New Jersey State Police</u>, Civil Action No.: 14-1313(FLW)(TJB), 2016 WL 3046257, at *15 (D.N.J. May 26, 2016) (dismissing plaintiff's claims "with prejudice for lack of standing"); <u>MSA Prods., Inc. v. Nifty Home Prods., Inc.</u>, 883 F. Supp. 2d 535, 542 (D.N.J. 2012) (dismissing claims with prejudice "[b]ecause further amendment would be futile").

## <u>CONCLUSION</u>

The Supreme Court's pronouncement in <u>Spokeo</u> that "Article III standing requires a concrete injury even in the context of a statutory violation" resolves this case.   136 S.Ct. at 1549.  Because the Plaintiff Ahmed Kamal has not suffered a "concrete" "injury in fact" necessary to confer constitutional standing to sue, this Court lacks subject-matter jurisdiction, and the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

Respectfully submitted,

**DLA PIPER LLP (US)**

s/ Andrew O. Bunn

| | |
|---|---|
| Andrew O. Bunn | Keara M. Gordon (admitted *pro hac vice*) |
| James V. Noblett | DLA Piper LLP (US) |
| Steven R. Marino | 1251 Avenue of Americas |
| DLA Piper LLP (US) | New York, New York 10020-1104 |
| 51 John F. Kennedy Parkway, Suite 120 | Telephone: (212) 335-4632 |
| Short Hills, New Jersey 07078-2704 | Facsimile: (212) 884-8632 |
| Telephone: (973) 520-2562 | *Attorneys for Defendants* |
| Facsimile: (973) 520-2582 | |
| *Attorneys for Defendants* | |

Dated: June 15, 2016

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

------------------------------------- X
                     :

AHMED KAMAL, on behalf of himself and
the putative class,
                     :   Case No. 2:15-cv-00190-WJM-MF

        Plaintiff,        :   *ELECTRONICALLY FILED*

      v.                   :

J. CREW GROUP, INC., et al.    :   Returnable:  August 1, 2016

        Defendants.    :   ORAL ARGUMENT REQUESTED
                     :
------------------------------------- X

---

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) DUE TO LACK OF STANDING

---

**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Telephone No.: (973) 520-2550
Fax No.: (973) 520-2551
*Attorneys for Defendants*

Of Counsel:
    Keara M. Gordon (admitted *pro hac vice*)
    Andrew O. Bunn

On the Brief:
    James V. Noblett
    Steven R. Marino

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .......................................................................................................... 2

I.  SPOKEO REQUIRES THAT A "BARE PROCEDURAL VIOLATION" BE
    ACCOMPANIED BY "CONRETE HARM." .................................................... 2

    A.  Kamal Does Not Allege that He Suffered any "Concrete Harm" ......... 3

    B.  Kamal Alleges Only a "Bare Procedural Violation" ............................ 7

II.  "HISTORY AND THE JUDGMENT OF CONGRESS" CANNOT SAVE THE
     AMENDED COMPLAINT .............................................................................. 7

    A.  Kamal's Reliance on Historical Origins of Protected Privacy Rights is
        Misplaced ............................................................................................ 7

        i.   Nickelodeon and Google Address a Plaintiff's Right to Seek
             Redress for "Unauthorized Disclosures" of Private Information ............ 7

    B.  Kamal's Reliance on Congressional Intent is Misplaced ..................... 9

CONCLUSION ...................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

C ASES

Anjelino v. New York Times Co.,
    200 F.3d 73 (3d Cir. 1999).................................................................................................3

Broderick v. 119TCbay, LLC,
    670 F. Supp. 2d 612 (W.D. Mich. 2009) ..........................................................9, 10

Doe v. Chao,
    540 U.S. 614 (2004).................................................................................................8

Gladstone Realtors v. Village of Bellwood,
    441 U.S. 91 (1979).................................................................................................2

Gubala v. Time Warner Cable, Inc.,
    Case No. 15-cv-1078, 2016 WL 3390415 (E.D. Wis. June 17, 2016) ...................3, 8

In re Google Inc. Cookie Placement Consumer Privacy Litig.,
    806 F.3d 125 (3d Cir. 2015)...........................................................................1, 7, 8

In re Nickelodeon Consumer Privacy Litig.,
    -- F. 3d --, 2016 WL 3513782 (3d Cir. June 27, 2016)................................... passim

In re Nickelodeon Consumer Privacy Litig.,
    MDL No. 2443, 2014 WL 3012873 (D.N.J. July 2, 2014).......................................4

In re Nickelodeon Consumer Privacy Litig.,
    MDL No. 2443, 2015 WL 248334 (D.N.J. Jan. 20, 2015) .......................................5

In re Toys "R" Us-Delaware Inc.-Fair and Accurate Credit Transactions Act (FACTA)
Litig.,
    2010 WL 5071073 (C.D.Cal. Aug. 17, 2010).............................................................9

Jamison v. Bank of Am., N.A.,
    No. 2:16-cv-00422, 2016 WL 3653456 (E.D. Cal. July 7, 2016)..............................3

Sartin v. EFK Diagnostics, Inc.,
    Civil Action No. 16-1816, 2016 WL 3598297 (E.D. La. July 5, 2016) ...................3

Smith v. Ohio State University,
    -- F Supp. 3d. --, 2016 WL 3182675 (S.D. Ohio June 8, 2016) ...............................3

Spokeo, Inc. v. Robins,
    136 S. Ct. 1540 (2016)................................................................................... passim

Summers v. Earth Island Institute,
    555 U.S. 488 (2009)..........................................................................................................2

**RULES**

Federal Rule of Civil Procedure 12(b)(1) ......................................................................10

**STATUTES/PUBLIC LAWS**

Cable Communications Policy Act ("CCPA") ..................................................................3

Credit and Debit Receipt Clarification Act of 2007 (the "Clarification Act") ............................10

Fair and Accurate Credit Transaction Act of 2003 ("FACTA").......................................... passim

Fair Credit Reporting Act ("FCRA")..........................................................................1, 3, 5

Telephone Consumer Protection Act of 1991 ("TCPA") ...............................................3

Truth in Lending Act of 1986 ("TILA")......................................................................3

**OTHER AUTHORITIES**

Bin List (Binlist) & Bin Ranges: List of Issuer Identification Numbers,
    https://www.bindb.com/bin-list.html.......................................................................9

Black's Law Dictionary (10th ed. 2014)......................................................................6

Merriam-Webster's Collegiate Dictionary 356 (11th ed. 2012).......................................6

## PRELIMINARY STATEMENT

In <u>Spokeo, Inc. v. Robins</u>, the Supreme Court acknowledged that "[a] violation of one of the FCRA's [Fair Credit Reporting Act] procedural requirements *may result in no harm*."   136 S. Ct. 1540, 1550 (2016) (emphasis added).  This is a case in which the alleged violations by Defendant J. Crew of the Fair and Accurate Credit Transaction Act of 2003 ("FACTA"), a subset of FCRA, "result[ed] in no harm" to Plaintiff Ahmed Kamal, depriving him of standing to sue.

There can be no dispute that Kamal alleges "a bare procedural violation, divorced from any concrete harm." <u>Id.</u> at 1549.  As explained in J. Crew's opening brief, Kamal does not allege that the three receipts he received were misappropriated, that the information therein was disclosed to any third parties, or that his identify has been (or will be) stolen.  Instead, the receipts were allegedly *handed to Kamal* physically by J. Crew employees, and they have been in the possession of *Kamal or his authorized representatives* (his lawyers) ever since.  Nothing in Kamal's opposition overcomes his lack of "concrete harm," and this Court should reject his attempts to analogize this case to the actual, concrete harm suffered by Internet users when their user information and online activity was collected and disclosed, without their knowledge or consent, for purposes of delivering targeted advertisements.  <u>See</u> <u>In re Nickelodeon Consumer Privacy Litig.</u>, -- F. 3d --, 2016 WL 3513782 (3d Cir. June 27, 2016); <u>In re Google Inc. Cookie Placement Consumer Privacy Litig.</u>, 806 F.3d 125 (3d Cir. 2015).  This case is very different.

This Court should also reject Kamal's argument that he has the automatic right to sue—in the absence of any concrete harm—because Congress purportedly afforded him that right under FACTA.  The Supreme Court in <u>Spokeo</u> already rejected such a blanket right to sue:  "Congress' role in identifying and elevating intangible harms *does not* mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and

1

purports to authorize that person to sue to vindicate that right." Id. at 1549 (emphasis added). Indeed, decades of Supreme Court precedent have made clear that notwithstanding Congress's intent, "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." Summers v. Earth Island Institute, 555 U.S. 488, 497 (2009); see also Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima"). Spokeo now drives that point home.

In sum, Kamal cannot escape the reality that he has alleged nothing more than "a bare procedural violation, divorced from any concrete harm." Spokeo, 136 S. Ct. at 1549. Recent Supreme Court precedent reinforces that, without more, Kamal does not have standing to sue under FACTA. The Amended Complaint should therefore be dismissed.

## ARGUMENT

## I. SPOKEO REQUIRES THAT A "BARE PROCEDURAL VIOLATION" BE ACCOMPANIED BY "CONRETE HARM."

Spokeo, as the most recent Supreme Court decision addressing standing, is the guidepost by which this Court should assess whether Kamal has pled an "injury in fact" sufficient to confer standing. There, the Supreme Court stated *twice* that a "bare procedural violation," without any associated "concrete harm" does *not* satisfy the constitutional requirement of standing:

- "[Plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Id. at 1549.

- "[Plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm." Id. at 1550.

Kamal attempts to minimize those statements in his opposition. However, courts assessing standing post-Spokeo have not overlooked Justice Alito's statements but, instead, dismissed cases where, as here, a procedural violation of a statutory scheme was *not*

accompanied by "concrete harm." See, e.g., Jamison v. Bank of Am., N.A., No. 2:16-cv-00422, 2016 WL 3653456, at *4 (E.D. Cal. July 7, 2016) (dismissing claim under the Truth in Lending Act of 1986 ("TILA") because "a procedural violation of the TILA requirements . . . does not inherently establish concrete harm"); Sartin v. EKF Diagnostics, Inc., Civil Action No. 16-1816, 2016 WL 3598297, at *4 (E.D. La. July 5, 2016) (dismissing claim under the Telephone Consumer Protection Act of 1991 ("TCPA") because the "allegations in the complaint establish nothing more than a bare violation of the TCPA, divorced from any concrete harm to [the plaintiff]"); Gubala v. Time Warner Cable, Inc., Case No. 15-cv-1078, 2016 WL 3390415, at *5 (E.D. Wis. June 17, 2016) (dismissing claim under the Cable Communications Policy Act ("CCPA") because "[g]iven the clear directive in Spokeo," the plaintiff did "not allege a concrete harm" in addition to the underlying procedural violation of the CCPA); Smith v. Ohio State University, -- F Supp. 3d. --, 2016 WL 3182675, at *4 (S.D. Ohio June 8, 2016) (dismissing putative class action under FCRA because plaintiffs "admitted that they did not suffer a concrete consequential damage as a result of [defendant's] alleged breach of the FCRA").

Kamal's attempts to characterize Spokeo as "of limited scope" and a "bizarre" and "unusual" case (ECF No. 51, Pl.'s Opp'n Br. to Mot. to Dismiss ("Opp. Br."), at p. 4) are undermined by the fact that courts across the country have affirmatively acted upon the holding that a "bare procedural violation, divorced from any concrete harm," does *not* satisfy Article III, Spokeo, 136 S. Ct. at 1549. This Court should do the same.

**A. Kamal Does Not Allege that He Suffered any "Concrete Harm".**

Kamal has not pled facts in the Amended Complaint to meet the "concrete harm" requirement articulated in Spokeo necessary to elevate his claim beyond that of a "bare procedural violation." See Anjelino v. New York Times Co., 200 F.3d 73, 88 (3d Cir. 1999)

("Standing is established at the pleading stage by setting forth specific facts that indicate that the party has been injured in fact or that injury is imminent . . . ").

Kamal allegedly purchased items at three J. Crew stores and J. Crew printed a receipt in partial compliance with FACTA, which they were physically handed to Kamal. (ECF No. 21, Am. Compl. at ¶¶ 1, 68-70). Absent from the Amended Complaint are any allegations that:

- The three receipts were lost, misplaced, or stolen, or were ever in the possession of an unauthorized third party;

- The credit card information displayed in any of the three receipts was ever disclosed to a third party;

- Any unauthorized purchases were made on the credit card Kamal used to make the three purchases;

- Kamal had to obtain a new credit card;

- Kamal's identity was stolen; or

- There is a future risk that Kamal's identity will be stolen.

(See also ECF No. 50-1, Dfs.' Moving Br. in Supp't of Mot. to Dismiss ("Mov. Br"), at pp. 8-10). In other words, Kamal's situation would be no different if he took the receipts and placed in them in drawer in his desk, locked the drawer, and threw away the key.

Kamal nonetheless argues in his opposition that he suffered concrete "harm" sufficient to confer standing. In support of this assertion, Kamal relies primarily on a recent decision by the Third Circuit, In re Nickelodeon Consumer Privacy Litig., -- F. 3d --, 2016 WL 3513782 (3d Cir. June 27, 2016), which is distinguishable for multiple reasons.

First, the plaintiffs in Nickelodeon pled five statutory claims and one common law claim. Judge Chesler first dismissed three claims with prejudice and three claims without prejudice. In re Nickelodeon Consumer Privacy Litig., MDL No. 2443, 2014 WL 3012873 (D.N.J. July 2, 2014). After the plaintiffs repled, Judge Chesler then dismissed the remaining three claims with

prejudice.  In re Nickelodeon Consumer Privacy Litig., MDL No. 2443, 2015 WL 248334 (D.N.J. Jan. 20, 2015).  On appeal, the Third Circuit affirmed the dismissal of all of the statutory claims and vacated only the dismissal of the common law claim (intrusion upon seclusion).  Nickelodeon, 2016 WL 3513782 at *2.  Thus, unlike Spokeo, the Third Circuit did not address whether a violation of a statute, without more, is sufficient to confer standing.  See, Spokeo, 136 S. Ct. at 1544 ("This case presents the question of whether respondent Robins has standing to maintain an action in federal court against petitioner Spokeo under the [FCRA].").

Second, Nickelodeon involved "unlawfully collected personal information about [plaintiffs] on the Internet, including what webpages [children] visited and what videos they watched on Viacom's websites."  Nickelodeon, 2016 WL 3513782 at *1.  Specifically, the defendants allegedly "unlawfully used cookies[1] to track" children's web browsing habits and to "collect[] information" to "sell targeted advertising."  Id. at *3, *4.  As such, Nickelodeon involved complex privacy concerns and the use of intrusive surveillance "cookies" without plaintiffs' notice or permission, whereas this case involves merely printing a receipt from a brick-and-mortar store.

Third, given the nature of the factual allegations, the limited standing analysis by the Third Circuit was confined to the improper *disclosure* of information on the Internet by Viacom to Google that Google, in turn, compiled to track children's internet usage.  Nickelodeon, 2016 WL 3513782 at *3.  The Third Circuit emphasized that those allegations of unlawful *disclosure to a third party* were sufficient to find that the plaintiffs had suffered a post-Spokeo "injury in fact":

---

[1]      "An Internet 'cookie' is a small text file that a web server places on a user's computing device.  Cookies allow a website to 'remember' information about a user's browsing activities (such as whether or not the user is logged-in, or what specific pages the user has visited)."  Id. at *2.

> The purported injury here is clearly particularized, as each plaintiff complains about the *disclosure* of information relating to his or her online behavior. While perhaps "intangible," the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, *the unlawful disclosure of legally protected information*.

Id. at *7 (emphasis added). Kamal latches onto this disclosure language in his opposition. (See Opp. Br. at p. 6). Kamal even goes as far as to argue that it summarily "disposed of the standing questing raised by J. Crew." (Id. at p. 1). That is not so.

Fatal to Kamal's reliance on Nickelodeon is the fact that this is simply *not* an improper *disclosure* case—the words "disclose" or "disclosure" never appear in the Amended Complaint. (Compare ECF No. No. 21, Am. Compl., with 7/20/16 Bunn Decl., Ex. A, Amended Complaint in Nickelodeon, at ¶ 2 ("this is a case about Defendant[s'] . . . misuse of Internet technology to *disclose*[,] compile, store, and exploit the video viewing histories and Internet communications of minor children") (emphasis added) (internal citations omitted)). Nor could they be.

Black's Law Dictionary defines "disclose" as "[t]o make (something) *known or public*; to show (something) after a period of inaccessibility or of being unknown; *to reveal*." Black's Law Dictionary (10th ed. 2014) (emphasis added). Webster's Dictionary similarly defines "disclose" to include "to make *known or public*." Merriam-Webster's Collegiate Dictionary 356 (11th ed. 2012) (emphasis added). Kamal's credit card information has *not* been made "known or public." Kamal does not allege that anyone besides himself or his lawyers have ever seen—or will ever see—his three receipts. It defies logic for Kamal to argue that he suffered "harm" akin to those who had their online information collected and *disclosed* against their knowledge and without their authorization. Because Kamal's personal information has not been disclosed, Kamal's

reliance on Nickelodeon and related cases is misplaced.  Kamal has not alleged a "concrete

harm" sufficient to meet the "injury in fact" standing requirements as articulated in Spokeo.[2]

### B.  Kamal Alleges Only a "Bare Procedural Violation".

Without any "concrete harm," the Amended Complaint contains nothing more than "a

bare procedural violation."  Spokeo, 136 S. Ct. at 1549-50; Mov. Br. at p. 11.  The Supreme

Court recognized in "some circumstances" it may be the case that "[a] violation of one of the

FCRA's procedural requirements may result in *no harm*."  Spokeo, 136 S. Ct. at 1549-50

(emphasis added).  This is one of those cases.

## II.  "HISTORY AND THE JUDGMENT OF CONGRESS" CANNOT SAVE THE AMENDED COMPLAINT.

According to Kamal, it is of no moment that he alleges a "bare procedural violation,

divorced from any concrete harm" because "history and the judgment of Congress" allow him to

do so under FACTA.  Id. at 1549.  But, "history and the judgment of Congress" cannot be used

by Kamal to overcome the Constitution.

### A.  Kamal's Reliance on Historical Origins of Protected Privacy Rights is Misplaced.

#### i.  Nickelodeon and Google Address a Plaintiff's Right to Seek Redress for "Unauthorized Disclosures" of Private Information.

The linchpins to Kamal's opposition, Nickelodeon and Google, fail to advance Kamal's

positions here.  Kamal cites to the following language in Nickelodeon:

---

[2]      Kamal relies on a 2015 opinion (predating Spokeo) that addressed privacy concerns
related to the use of "cookies."  In re Google Inc. Cookie Placement Consumer Privacy Litig.,
806 F.3d 125 (3d Cir. 2015).  Google is distinguishable for the same three reasons as
Nickelodeon.  For example, the Third Circuit acknowledged that Judge Chesler did not
"definitively resolv[e] the standing challenge," and the Third Circuit's standing analysis is
similarly concise.  Id. at 134-35.  Moreover, the underlying conduct at issue in Google also dealt
with dissemination of online information to enhance advertising opportunities.  Id. at 131-33.

> Insofar as <u>Spokeo</u> directs us to consider whether an alleged injury-
> in-fact has traditionally been regarded as providing a basis for a
> lawsuit, <u>Google</u> noted that Congress has long provided plaintiffs
> with the right to seek redress for unauthorized disclosures of
> information that, in Congress's judgment, ought to remain private.

(Opp. Br., at p. 1) (quoting <u>Nickelodeon</u>, 2016 WL 3513782, at *7) (internal alteration and

quotation marks omitted).  <u>Nickelodeon</u> relies on  the Third Circuit's prior statement in <u>Google</u>

that "the Supreme Court itself has permitted a plaintiff to bring suit for violations of federal

privacy law absent any indication of pecuniary harm."  <u>Google</u>, 806 F.3d at 134 (internal

footnote and citation omitted).

The reference in <u>Google</u> to Supreme Court precedent is to <u>Doe v. Chao</u>, 540 U.S. 614

(2004).  But, <u>Doe</u> is just another case about improper *disclosure* of *private* information.  There,

the petitioner complained that the Office of Workers' Compensation Programs used his social

security number on documents "sent to groups of claimants, their employers, and the lawyers

involved in their cases."  <u>Id.</u> at 616-17.  And, the government conceded that it "disclos[ed] *Doe's*

*Social Security number* beyond the limits set by the Privacy Act [of 1974]."  <u>Id.</u>

Here, in contrast, the credit card digits on Kamal's receipts have *not been disclosed* to

anyone.  In the absence of any such disclosure, Kamal's attempts to piggy-back on prior

Supreme Court (and Third Circuit) precedent addressing the relationship between *disclosure* and

lack of pecuniary harm is misplaced.  Courts post-<u>Spokeo</u> have dismissed cases when, like here,

the plaintiff fails to allege improper disclosure to an unauthorized third person.  <u>See, e.g.</u>,

<u>Gubala</u>, 2016 WL 3390415, at *4 ("[Plaintiff] does not allege that the defendant has disclosed

his information to a third party. . . .").

Moreover, the private information at issue in <u>Doe</u> (the petitioner's social security

number) is not analogous to the alleged FACTA violation here (the acting of printing the "first

six digits" of Kamal's credit card number).  (ECF No. 21, Am. Compl. at ¶¶ 2).  "This is because the first six digits of any credit or debit card number identify the issuing bank or other entity, not an account number unique to the consumer."  In re Toys "R" Us-Delaware Inc.-Fair and Accurate Credit Transactions Act (FACTA) Litig., 2010 WL 5071073, at *11 (C.D.Cal. Aug. 17, 2010).[3]  Because the first six digits of Kamal's credit card number simply identifies the issuer of his credit card, it reveals nothing more than what Kamal himself reveals in the Amended Complaint, a publicly-filed document: that he used a "Discover-branded credit card."  (ECF No. 21, Am. Compl. at ¶¶ 70-70).

**B.  Kamal's Reliance on Congressional Intent is Misplaced.**

While Congressional intent behind FACTA is probative of the standing analysis, "Congress' role in identifying and elevating intangible harms *does not* mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  Spokeo, 136 S. Ct. at 1549 (emphasis added).  That is because "'Congress cannot erase Article III's standing requirements[.]'"  Id. at 1547-48 (quoting Raines v. Byrd, 521 U.S. 811, 820, n.3 (1997)) (collecting cases); see also supra at p. 2.

Even if this Court peels back the Congressional intent behind FACTA, it does not support Kamal's positions.  First, in enacting FACTA, "Congress [was] interested in preventing *the actual harm of real identity theft*."  Broderick v. 119TCbay, LLC, 670 F. Supp. 2d 612, 619 (W.D. Mich. 2009) (emphasis added).

> FACTA addresses all aspects of the identify theft problem by, inter alia, establishing procedures to alert consumers about fraud and

---

[3]     See also Bin List (Binlist) & Bin Ranges: List of Issuer Identification Numbers, https://www.bindb.com/bin-list.html ("The first 6 digits of a credit card number . . . identify the institution that issued the card to the card holder.").

> identify theft issues, providing greater access to consumer credit reports, and establishing certain rights for identify theft victims. Truncation of credit card numbers is but one of many FACTA provisions designed to address these issues. Reading the statute as a whole, the importance of protecting consumers from exposure to *actual, legitimate risks of identity theft becomes even more pronounced.*

(Id.) (emphasis added). Indeed, when FACTA was amended by the Credit and Debit Receipt Clarification Act of 2007 (the "Clarification Act"), Congress noted explicitly its intent to "ensure that consumers suffering from any *actual harm* to their credit or identity are protected." Pub.L. No. 110-241, § 2(b) (emphasis added); see also Broderick, 670 F. Supp. at 620 ("Congress' concern with actual, legitimate risks of identity theft . . . is also reflected by the [Clarification Act]"). In this case, Kamal has not suffered "actual harm." See supra p. 1.

Second, in connection with the Clarification Act, Congress referenced its goal of "*limiting abusive lawsuits* that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." Pub.L. No. 110-241, § 2(b) (emphasis added). Spokeo's requirement of "concrete harm" and not just "a bare procedural violation" to establish standing, 136 S. Ct. at 1549-50, closes the floodgates to "abusive lawsuits" because a plaintiff, such as Kamal, should not be able to seek millions of dollars in class-wide damages (and fees for his attorneys) when the digits on his or her credit card have not even been *disclosed* to unwanted eyes. The Amended Complaint is the precise definition of an "abusive lawsuit" as Congress used that term.

## CONCLUSION

Plaintiff Ahmed Kamal has not suffered a "concrete" "injury in fact" necessary to confer constitutional standing to sue, this Court lacks subject-matter jurisdiction, and the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

Respectfully submitted,

**DLA PIPER LLP (US)**

s/ Andrew O. Bunn
Andrew O. Bunn
James V. Noblett
Steven R. Marino
DLA Piper LLP (US)
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078-2704
Telephone: (973) 520-2562
Facsimile: (973) 520-2582
*Attorneys for Defendants*

Dated: July 20, 2016

Keara M. Gordon (admitted *pro hac vice*)
DLA Piper LLP (US)
1251 Avenue of Americas
New York, New York 10020-1104
Telephone: (212) 335-4632
Facsimile: (212) 884-8632
*Attorneys for Defendants*